UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID WILBURN,

                                Plaintiff,

                                                                                             DECISION AND ORDER

                                                                                            04-CV-6589L

                        v.

EASTMAN KODAK CORPORATION,

                                Defendant.
_____

      This action was brought by an African-American plaintiff, David Wilburn, against his former employer, Eastman Kodak Corp. ("Kodak") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The complaint, which was filed *pro se*, asserts six bases for plaintiff's claims, all relating generally to Kodak's alleged discrimination against plaintiff on account of his race, and its alleged retaliation against him for complaining about that discrimination.

      Kodak has moved for summary judgment. Plaintiff, who is now represented by counsel, states that he is withdrawing his claims alleging Kodak's wrongful failure to promote him, denial of equal pay, wrongful termination, and retaliation. That leaves just two claims, which the complaint describes as "fostering a hostil[e] environment," and "failure to reprimand harassing co-wo[r]kers." Dkt. #1 ¶ 7. I construe those "claims" in the *pro se* complaint as bases for what amounts to a single

claim of hostile work environment. That also appears to be the position that plaintiff has taken in his response to Kodak's motion. *See* Plaintiff's Mem. of Law (Dkt. #51).

For the reasons that follow, I find that Kodak is entitled to summary judgment on that sole remaining claim. The complaint is therefore dismissed.

**BACKGROUND**

Wilburn began working for Kodak in October 1979. In December 2003, he was notified that his employment would be terminated as part of a large-scale reduction in force at Kodak. The effective date of Wilburn's termination was February 5, 2004.

After exhausting his administrative remedies, plaintiff filed this action in November 2004. This was not, however, the first lawsuit that plaintiff had brought against Kodak. In 2001, while he was still employed at Kodak, Wilburn filed an action in this Court asserting Title VII claims against Kodak based on allegations of a hostile work environment and disparate treatment in the terms and conditions of his employment.

By Decision and Order dated June 17, 2003, Judge Michael A. Telesca of this Court granted Kodak's motion for summary judgment in that case and dismissed Wilburn's complaint. *See* 01-CV-6061, Dkt. #42. While many of Wilburn's claims were dismissed as time-barred, others were also dismissed on the merits. Judge Telesca stated, for example, that the alleged incidents of harassment by Wilburn's coworkers were "swiftly resolved by Kodak" and that they did not amount to "a material and adverse change in the terms and conditions" of Wilburn's employment. *Id.* at 10.

**DISCUSSION**

Kodak contends that Wilburn's hostile work environment claim is barred by the doctrine of res judicata, by virtue of Judge Telesca's June 2003 decision. I agree.

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002); *accord King v. Fox*, 418 F.3d 121, 131 (2d Cir. 2005). Therefore, "a judgment on the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respect matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993). In determining whether a party's claims were or could have been previously raised, "[i]t is [the] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiff chooses] to frame [his] complaint," which informs the court's analysis. *Id.* at 39. *See also Channer v. DHS*, 527 F.3d 275, 280 (2d Cir. 2008) (in deciding whether a suit is barred by res judicata, court must determine whether second suit involves the same "claim," or "nucleus of operative fact" as the first suit) (internal quotation marks omitted).

For Judge Telesca's decision in Wilburn's prior action to have res judicata effect in the case at bar, then, four factors must be satisfied. The prior decision must have been "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or

their privies, and (4) involving the same cause of action." *Esquire Trade & Finance, Inc. v. CBQ, Inc.*, 562 F.3d 516, 520 (2d Cir. 2009) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)).

In response to Kodak's motion, plaintiff cites Second Circuit authority that, "[a]s a matter of logic, when the second action concerns a transaction occurring after the commencement of the prior litigation, claim preclusion generally does not come into play." *Legnani v. Alitalia Linee Aeree Italiane*, S.P.A., 400 F.3d 139, 141 (2d Cir. 2005) (quoting *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)). That principle relates to the fourth criterion for the application of res judicata, *i.e.*, that the two actions must have involved the "same" cause of action. *See Maharaj*, 128 F.3d at 97 ("the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit").

In support of this argument, plaintiff contends that the instant suit is based upon certain "racist graffiti" in Wilburn's workplace, which he asserts was not part of the basis for his claims in the prior action. White Decl. (Dkt. #50) ¶ 13. Plaintiff contends that any claims relating to this "new graffiti," *id.* ¶ 15, could not have been raised in the prior action, since the graffiti did not exist, or at least was not seen by Wilburn, until after the commencement of the prior lawsuit.

Wilburn's reliance on *Legnani* is misplaced, however. In that case, the Second Circuit held that res judicata did not bar the plaintiff's retaliatory discharge action, since "[w]hen Legnani filed her [prior] 1995 action, she had not yet been discharged from Alitalia. She could not have brought the retaliatory discharge action at that time and, accordingly, she was free to bring her retaliatory discharge claim in this subsequent action," which was filed in 1999. *Id.* at 141.

The holding in *Legnani*, then, was based on the occurrence of a wholly new, independent event–the plaintiff's termination–in 1998, after the date of filing of the plaintiff's prior lawsuit.[1] In contrast, in the case at bar Wilburn simply alleges additional instances of the same conduct, and the same inaction by Kodak in response to that conduct, that formed the basis for his prior claims before Judge Telesca.

The general rule is that "the doctrine [of res judicata] applies to facts learned after the filing of the earlier complaint when such facts are merely 'additional examples of the earlier-complained of conduct.'" *Jean-Gilles v. County of Rockland*, 463 F.Supp.2d 437, 454 (S.D.N.Y. 2006) (quoting *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)). *See also Mudholkar v. University of Rochester*, 261 Fed.Appx. 320, 322 (2d Cir. 2008) ("Allegations challenging the continuing disparate effects of discriminatory conduct that has been previously alleged do not constitute allegations of a new violations") (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)). Thus, the mere fact that, according to Wilburn, he continued to be exposed to offensive graffiti after he commenced his prior lawsuit is not the sort of new, discrete event that would have been logically impossible for plaintiff to have raised at the time that he filed his prior lawsuit.

That is not to say, of course, that simply because Judge Telesca granted summary judgment for Kodak in the prior action, Wilburn would be barred from bringing any future claims against Kodak alleging the same type of discrimination as that alleged in that earlier action. Judge Telesca's

---

[1] In 1998, the plaintiff in *Legnani* had also sought leave to supplement her complaint in the 1995 action to add a retaliatory discharge claim, but the district court denied the motion. The Court of Appeals held that the plaintiff's failure to appeal from that denial was of no consequence with respect to the res judicata issue. 400 F.3d at 141.

decision in Kodak's favor did not amount to a free pass for Kodak to tolerate the existence of a racially hostile environment from that point forward.

What is crucial here, however, is that plaintiff's allegations and the evidence in the instant lawsuit do not add anything qualitatively different from what he alleged in his prior action. Wilburn testified at his deposition in this case that the graffiti "was an ongoing thing," and that "in 2001 ... it was still there. And in 2003 it was still there." Def. Ex. 6 at 134.

In his decision granting summary judgment for Kodak on those claims, Judge Telesca dismissed many of Wilburn's claims as time-barred, but he also dismissed them on the merits. Judge Telesca stated that the evidence demonstrated "Kodak's swift enforcement of its policies against racial discrimination and harassment" following Wilburn's complaints and the appearance of racist graffiti in plaintiff's workplace. Dkt. #41-7 at 8. He also held that "[n]one of Wilbern's ... claims, all of which describe fleeting social discord, minor incidents with coworkers that were swiftly resolved by Kodak, or vague and unsubstantiated generalities, chronicle a material and adverse change in the terms and conditions of Wilburn's employment ... ."[2] *Id.* at 9-10. He concluded that the incidents alleged by plaintiff did not give rise to an adverse employment action for purposes of a Title VII claim. *Id.* at 10.

In the case at bar, plaintiff has alleged, and the evidence shows, the same types of graffiti as those alleged in the prior lawsuit. Indeed, in his interrogatory answers in this case, plaintiff referred to alleged "racial graffiti and intimidating books and magazines," and stated that "[t]hese incidents were ongoing throughout plaintiff's employment from 1979 through 2003." Dkt. #39-10 ¶ 4(d).

---

[2]For reasons that are not apparent, plaintiff's name in the prior action was spelled "WILBURN" rather than "Wilburn."

Likewise, in his administrative charge filed in July 2003, plaintiff alleged, "Since my employment with this department *until the present day* there it has been the practice of some of my co-workers to write graffiti on walls, elevators, and trucks in my department." Dkt. #41-8 at 2 (emphasis added).

Again, the Court does not mean to suggest that simply because Wilburn's prior claims were dismissed, he is forever barred from bringing those *types* of claims against Kodak. If, for example, the prior claims were dismissed because the evidence showed that Kodak had taken adequate steps to put an end to the offensive behavior by Wilburn's coworkers, that would not mean that Wilburn could not later file another action against Kodak, alleging that on a later occasion, Kodak had *failed* to take such steps. In other words, just because Kodak was found to have done nothing unlawful before a certain date does not mean that it could not be found to have acted unlawfully after that date. Similarly, the fact that objectionable conduct that was previously found insufficient to give rise to a hostile work environment or an adverse employment action does not mean that such conduct could not later intensify or escalate to the point where it could give rise to a Title VII claim.

None of that is what occurred here, however. The record before me shows that the graffiti of which plaintiff now complains was essentially the same as, and a continuation of, that which he alleged in his prior lawsuit. Judge Telesca's dismissal of Wilburn's previous claims based on those matters therefore precludes plaintiff from asserting this claim now.

Even if the Court were to consider these claims on the merits, however, I would reach the same result. Viewing the evidence in the light most favorable to plaintiff, the nonmoving party, much of the graffiti to which Wilburn refers, though vulgar, had no overtly racial character. And though some of the graffiti was racist and patently offensive, in the context of all the evidence, it was

not so ubiquitous, severe or pervasive as to create an actionable hostile work environment. *See Smith v. New Venture Gear, Inc.*, 319 Fed.Appx. 52, 57 (2d Cir. 2009) (district court was correct in granting summary judgment for employer on employee's hostile work environment claim, since, "[e]ven viewed in a light most favorable to Piquet, the evidence as a whole demonstrates no more than isolated or episodic instances of hostile conduct"); *Gibson v. Fluor Daniel Services Corp.*, 281 Fed.Appx. 177, 179 (4th Cir. 2008) (magistrate judge correctly concluded that ugly racist graffiti in the many port-o-johns surrounding the large construction site in which plaintiffs worked, and the use of racially offensive derogatory remarks on site, were not sufficiently severe or pervasive to alter the conditions of employment or create an abusive atmosphere for purposes of hostile work environment claim); *Rios v. Buffalo and Fort Erie Public Bridge Auth.*, No. 04-CV-375, 2008 WL 657121, at *4 (W.D.N.Y. Mar. 7, 2008) (granting summary judgment for employer where plaintiff "identified only a handful of offensive cartoons, drawings, jokes and comments that occurred over a lengthy period of time").

I also note that plaintiff alleges that in addition to the graffiti, his "workplace was wrought with intimidation and fear" because "common workplace areas frequently had gun magazines on display." Dkt. #50 ¶ 20. While I am not prepared to rule categorically that images of guns could never contribute to a racially hostile work environment, the connection that plaintiff seeks to draw between these magazines and the alleged racist graffiti (which was typically found in bathrooms and elevators, *see id.* ¶ 14), is far too tenuous to support his hostile work environment claim.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #39) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 23, 2009.